IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| M3 MIDSTREAM LLC, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 13-2631 (JBS/AMD) |
| v. | |
| | **OPINION** |
| SOUTH JERSEY PORT CORPORATION, et al., | |
| Defendants. | |

APPEARANCES:

Mark A. Rosen, Esq.
Michael R. Morano, Esq.
McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962
    Attorneys for Plaintiff

Ronald Betancourt, Esq.
BETANCOURT, VAN HEMMEN & GRECO
114 Maple Avenue
Red Bank, NJ 07701
    Attorney for Defendant South Jersey Port Corp.

Richard B. Wickersham, Jr., Esq.
POST & SCHELL, PC
Four Penn Center
1600 JFK Boulevard, 13th Floor
Philadelphia, PA 19103
    Attorney for Delaware River Stevedores, Inc.

Albert M. Belmont, III, Esq.
BOCHETTO & LENTZ, PC
1524 Locust Street
Philadelphia, PA 19102
    Attorney for Defendants Calibre Pipe & Tube, LLC, and Shaun
       & Michele C. Brock

**SIMANDLE, Chief Judge:**

**I. Introduction**

This matter is before the Court sua sponte to determine whether subject matter jurisdiction exists over this action.[1] The key question for the Court is whether a provision in a bill of lading extending the protections of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, et seq., to servants and agents of the cargo carrier for the period after discharge from the carrier may be the basis for removal of a suit for negligent damage to cargo brought by a plaintiff which was not a party to the bill of lading. Because the Court concludes it cannot, for the reasons explained below, it follows that subject matter jurisdiction is lacking, and this action will be remanded to Superior Court of New Jersey in Camden County for further proceedings.

**II. Background**

The case arises out of alleged damage to approximately 79,000 feet of pipe, ordered by Plaintiff M3 Midstream, LLC, from Defendant

---

[1]     Fed. R. Civ. P. 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Federal courts "have an independent obligation to ensure they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011).

Calibre Pipe & Tube, LLC in April 2011.[2]

The pipe shipped on three vessels -- Varesia, Greta and Mariana -- from China, India and Korea, and was imported through the Camden, N.J., terminal of Defendant South Jersey Port Corporation ("SJPC") between September 16 and 19, 2011. An inspector examined the pipe and determined it was in "generally good condition," subject to some noted exceptions. (Second Amended Complaint ("SAC") [Docket Item 16] ¶ 25.) For approximately one month, the pipe remained at the Port of Camden, where "SJPC had physical possession of the pipe" and "during which time the pipe was handled by SJPC . . . ." (Id. ¶ 26). Plaintiff asserts that SJPC had "possession and primary control over the pipe" during that month. (Id. ¶ 37.) Between October 14 and 25, 2011, the Defendant Delaware River Stevedores, Inc. ("DRS") loaded the pipe onto trucks to be shipped to a Dura-Bond pipe-coating facility. (Id. ¶ 27.)

Plaintiff asserts that the damage to the pipe occurred after the pipe was unloaded from the vessels and before the pipe was loaded onto the trucks by the DRS, while in possession of SJPC and the DRS. (Id. ¶ 29.) Plaintiff also alleges that DRS was negligent in "transporting the pipe to the delivery trucks to be delivered to

---

[2]    Plaintiff asserts that Defendants Shaun and Michele C. Brock are managers of Calibre. Michele Brock replies that she is a "passive member," not a managing member, of Calibre. (Brocks' Reply [Docket Item 62] at 5.)

Dura-Bond," a pipe-coating facility. (Id. ¶ 49.) According to the Second Amended Complaint, the pipe damage was "indicative of fork lift tines striking" the pipe and "belled end damage indicative of pipe being allowed to strike a hard surface." (Id.) This damage was different in "character and degree" than the damage noted by the inspector at the time of unloading, and rendered the pipe "completely unusable." (Id. ¶¶ 11, 29.) As a result of the damage, Plaintiff was unable to fulfill 79,000 feet of its customer's order. (Id.)

At least one of the shipments -- pipe carried by the Mariana -- was subject to a "WESTFAL-LARSEN SHIPPING" bill of lading. (See DRS Response to the Order to Show Cause ("DRS Resp.") [Docket Item 53] Ex. A at M3_03057, M3_03058.) The bill of lading lists Shanghai Zhongyou Tipo Steel Pipe Co., Ltd., as the "SHIPPER/EXPORTER," and designates the consignee as "TO THE ORDER OF SHIPPER." (Id. at M3_03057.) The bill of lading lists Shanghai, China, as the port of loading and Camden, N.J., as the port of discharge, but leaves two form fields blank: "FOR ON CARRIAGE TO" and "ONWARD INLAND ROUTING." (Id.) The party to be noticed is "Rushmore Enterprises, Inc." of Baytown, Texas. (Id.) In other words, the bill of lading provides for transport of the pipe to its off-loading from the vessel in Camden with no provision for inland transport.

The bill of lading includes a "Paramount clause" referencing

COGSA and a Himalaya clause extending COGSA to servants and agents of the carrier of the cargo. The Paramount clause provides:

> this Bill of Lading . . . shall have effect subject to the Hague Rules or any legislation making such Rules or the Hague-Visby Rules compulsorily applicable (such as COGSA or COGWA) to this Bill of Lading and the provisions of the Hague Rules shall be deemed incorporated herein. The Hague Rules (or COGSA or COGWA if this Bill of Lading  is subject to U.S. or Canadian law respectively) shall apply to the carriage of Goods by inland waterways . . . . If and to the extent that the provisions of the Harter Act of the United States of America 1893 would otherwise be compulsorily applicable to regulate the Carrier's responsibility for the Goods during any period prior to loading on or after discharge from the vessel, the Carrier's responsibility shall instead be determined by the provisions of 4(2) below, but if such provisions are found to be invalid, such responsibility shall be subject to COGSA.

> (B) The Carrier shall be entitled to . . . the full benefit of, and rights to, all limitations and exclusions of liability and all rights contained or authorized by any applicable law, statute or regulation of any country (including, but not limited to . . . the Revised Statutes of the United States of America . . . ) . . . .

(Id. at M3_03058) The Himalaya clause provides:

> It is hereby expressly agreed that no servant or agent of the Carrier (including every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant[3] for any loss, damage or delay arising or resulting directly or indirectly from any act, negligent, or default on his part while acting in the course of or in connection with his employment and, but

---

[3] The bill of lading defines the term "Merchant" to include "the Shipper, the Receiver, the Consignee, the Holder of the Bill of Lading and the Owner of the cargo." (Id.)

> without prejudice to the generality of the foregoing
> provisions in this clause, every exception, limitation,
> condition and liberty herein contained and every right,
> exemption from liability, defense, and immunity of
> whatsoever nature applicable to the Carrier or to which
> the Carrier is entitled hereunder shall also be available
> and shall extend to protect every such servant or agent
> of the Carrier acting as aforesaid and for the purpose of
> all the foregoing provisions of this clause, the Carrier
> is or shall be deemed to be acting as agent or trustee on
> behalf of and for the benefit of all persons who are or
> might be his servants or agents from time to time
> (including independent contractors as aforesaid) and all
> such persons shall in this extent be or be deemed to be,
> parties to the contract evidenced by this Bill of Lading.

(Id.)[4]

Plaintiff filed a nine-count Complaint in New Jersey Superior Court, alleging common law claims of bailment, conversion and negligence against SJPC (Count I-III), conversion and negligence against the DRS (Counts IV & V), negligence against Calibre and the Brocks (Count VI), and breach of contract, promissory estoppel, and unjust enrichment against Calibre (Counts VII-IX).

Defendant Calibre removed this matter, with consent of all Defendants, pursuant to 28 U.S.C. § 1441(a), asserting that the

---

[4]     Defendants assert that Plaintiff has refused to produce any other bills of lading covering the other shipments. Plaintiff responds that it "has produced all of the bills of lading in its possession and under its control." (Pl. Resp. to OTSC ("Pl. Resp.") [Docket Item 59] at 3 n.2.) Because there is nothing else in the record to consider, the Court will conduct its analysis based on the Westfal-Larsen bill of lading.

action arises under COGSA, even though Plaintiff did not bring any claims under that statute. (Petition for Removal [Docket Item 1] at 3.) Calibre asserted that

> a portion of the pipe may have been damaged in transit via shipment over the seas from locations in East and South Asia to the United States and, therefore, implicates the provisions of the Act with respect to the liability of the named Defendants and other as yet unnamed common carrier Defendants.

(Petition for Removal ¶ 13.) Calibre contended that Plaintiff "has failed to name or join any of these indispensable parties," referring to the carriers that brought the pipe to the Port, and "cannot artfully plead its Complaint to evade federal jurisdiction." (Id. at 14.) Calibre concluded that this action

> is therefore a civil suit for damages and arises under and involves claims subject to the Act, and this Court would therefore have original jurisdiction of the action, without regard to the amount in controversy, pursuant to 29 U.S.C.A. § 185. Since this civil action is based on a claim or right arising under the laws of the United States, it may be removed to this court pursuant to 28 U.S.C.A. § 1441, without regard to the citizenship or residence of the parties.

(Id. ¶ 15.) Thus, Calibre, as the removing party, portrayed M3 Midstream's claim as one arising from damage occurring during shipments by vessel over the seas from Asia to the United States, despite the fact that M3 Midstream does not sue the vessel and claims only for damage occurring after the cargo was offloaded and stored in Camden.

7

The Court entered an Order to Show Cause why the matter should not be remanded to state court. (Order to Show Cause ("OTSC") [Docket Item 48] at 1.) The Court suggested that COGSA was not implicated by the Complaint, because "Plaintiff has not sued any carrier within the meaning of COGSA, nor does Plaintiff allege that the damage occurred at sea or while the pipe was being unloaded." (Id. at 3.) The Court continued: "a defendant's speculation in its answer or petition for removal, contradicting the pleadings and thereby implicating a federal statute, cannot be the basis for federal question jurisdiction." (Id.) Given the factual allegations in the Complaint as to the inspection report and timing of the alleged damage, the Court noted that there was no basis to conclude that the Complaint had been artfully pleaded to avoid federal jurisdiction. (Id. at 4.) Furthermore, carriers are "not essential parties to an action alleging state-law claims arising from conduct that occurred after the goods were in Port." (Id.) Finally, the Court noted that jurisdiction did not appear to exist on the basis of diversity, under 28 U.S.C. § 1332(a), because the parties were not completely diverse. (Id. at 5.) The SJPC, DRS, and Calibre and the Brocks each filed responses, asserting that subject matter jurisdiction exists. [Docket Items 53, 54 & 55.] Plaintiff, which had not moved for remand, filed a response asserting that jurisdiction is lacking and

requesting remand to state court. [Docket Item 59.] The Court heard oral argument on February 4, 2014, and invited supplemental submissions to resolve lingering factual questions related to diversity jurisdiction.

## III. Discussion

### A. Burden of proof

The "party asserting a federal court's jurisdiction bears the burden of proving that jurisdiction exists," and federal courts "are presumed not to have jurisdiction without affirmative evidence of this fact." Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C., 692 F.3d 283, 293 (3d Cir. 2012). The Third Circuit counsels that "all doubts should be resolved in favor of remand." Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

### B. Subject matter jurisdiction

"Under the well-pleaded complaint rule, there can be no removal on the basis of federal question unless the federal law under which the claim arises is a direct and essential element of the plaintiffs case." In re Cmty. Bank of N. Va., 418 F.3d 277, at 293 (3d Cir. 2005) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 10-12 (1983)). However, if federal law completely preempts state law, "'any claim purportedly based on that pre-empted

state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" Id. at 294 (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)). Complete preemption must be distinguished from "substantive preemption, which displaces state law but does not, as a defense, confer federal question jurisdiction." Lazorko v. Pa. Hosp., 237 F.3d 242, 248 (3d Cir. 2000).

   The Court begins with COGSA, the statute that is the asserted basis for federal question jurisdiction. COGSA "applies to a carrier engaged in the carriage of goods to or from any port in the United States." 46 U.S.C.A. § 30702(a). A "carrier" is defined as the "owner, manager, charterer, agent, or master of a vessel." 46 U.S.C.A. § 30701. A carrier "may not insert in a bill of lading or shipping document a provision avoiding its liability for loss or damage arising from negligence or fault in loading, stowage, custody, care, or proper delivery." 46 U.S.C.A. § 30704. COGSA applies from "tackle to tackle," meaning "the period of time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C. app. § 1301(e)[5]; SPM Corp. v. M/V Ming Moon, 965 F.2d 1297, 1300 (3d

---

[5] The note following 46 U.S.C.A. § 30701, which contains the text of COGSA, 49 Stat. 1207 (1936), as amended, was classified to former 46 App. U.S.C.A. §§ 1300 to 1315 prior to the general revision and enactment into positive law of Title 46, Shipping, by Pub. L. 109-304, Oct. 6, 2006, 120 Stat. 1485, but was not repealed, omitted, or restated by Pub. L. 109-304.

Cir. 1992). According to Section 7 of COGSA:

> Nothing contained in this chapter [this note] shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea.

46 U.S.C.A. § 30701, Sec. 7 (formerly 46 U.S.C. app. § 1307). These provisions appear in the United States Code in Chapter 307 of Title 46, Subtitle III, which describes "Liability of Water Carriers."

The Defendants advance three basic arguments in favor of finding subject matter jurisdiction: (1) the Complaint, on its face, implicates COGSA, (2) the bill of lading's Paramount and Himalaya provisions extend COGSA protection to the DRS and SJPC, thereby conferring federal question jurisdiction on this matter, and (3) the Complaint was artfully pleaded to avoid federal jurisdiction. In other words, Defendants argue that subject matter jurisdiction arises, in one fashion or another, from COGSA.[6] For the reasons

---

[6] At oral argument, the parties discussed whether this action is maintainable under diversity jurisdiction. It is not. Plaintiff is a limited liability company, which is treated as a partnership for purposes of establishing citizenship, meaning that "the citizenship of an LLC is determined by the citizenship of its members." Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010). Plaintiff represents that Russell Brantley Baird, a member and executive officer of M3 Midstream, is a citizen of Texas. Thus, Plaintiff is a citizen of Texas. Counsel for Defendants Calibre Pipe & Tube LLC and the Brocks represented at oral argument that both

explained below, based upon Plaintiff's actual pleadings and the documentary discovery produced herein, the Court is unpersuaded by Defendants' arguments and will remand this matter to Superior Court in New Jersey. There is more than substantial doubt about the removal jurisdiction of this case, and such doubt must therefore "be resolved in favor of remand." Boyer, 913 F.2d at 111.

> **1. Whether the Complaint, on its face, implicates COGSA**

One of the DRS's arguments is that the Complaint "does not foreclose a federal claim even absent a Himalaya clause provision," because the Complaint alleges that the DRS "intentionally or negligently damaged and/or destroyed the pipe while it was in DRS's possession." (SAC ¶ 46; DRS Resp. at 8.) The DRS contends that this allegation "is worded broadly enough to allow Plaintiff to pursue a claim that some damage occurred during discharge." (DRS Resp. at 8.) The DRS asserts that it "was only responsible for discharge of the pipes to first landing in this matter," and the "unloading of goods at port is included in the activity covered by COGSA." (Id. at 8-9.) The DRS requests that "if the Court is otherwise inclined to remand this case . . . , that it require Plaintiff to make a definitive admission that it is not pursuing any claim for damage

---

Calibre and Michele Brock are citizens of Texas. (See also Second Am. Compl. ¶¶ 4-6). Therefore, this action lacks complete diversity, and this Court may not exercise jurisdiction under 28 U.S.C. § 1332(a).

done during the period of discharge to first landing." (Id. at 9.)

Calibre, likewise, continues to assert that "as originally pled, and as discovery has demonstrated, some portion of the pipes were damaged in transit or unloading, subjecting that portion of the claim to COGSA." (Calibre Resp. to OTSC ("Calibre Resp.") [Docket Item 54] at 1.) Calibre notes that the inspection reports observed some pipe damage during transit or unloading. (Id. ¶ 14.)

Despite the wording of the Second Amended Complaint quoted by the DRS, and despite Calibre's assertion that some pipe was damaged during carriage, the Complaint cannot reasonably be construed to bring a claim for damage that occurred at sea or during unloading. Plaintiff pleads that the damage "occurred after the pipe was unloaded from the Vessels, and during the time it was in the possession of and handled by SJPC and DRS, and before the pipe had been loaded onto trucks to be delivered to Dura-Bond . . . ." (SAC ¶ 29) (emphasis in original). Plaintiff also pleads that the complained-of damage to the pipe "is of a completely different character and degree than the exceptions noted by the inspector at the time of initial unloading from the vessel." (Id.)

Moreover, Plaintiff has repeatedly and unambiguously represented to this Court, and to the Defendants, that it does not seek relief for any damage to the pipes sustained at sea or during

unloading. In its response to the Order to Show Cause, Plaintiff emphasizes that "M3 Midstream's claims relate to pipe damage that occurred *after* the pipe was discharged." (Pl. Resp. at 1) (emphasis in original). Plaintiff underscores that it "has not brought any claim for damage to the pipe while it was at sea or being discharged. Rather, M3 Midstream's claims concern pipe damage that occurred post-discharge." (Id. at 3.) In a letter submitted after oral argument, Plaintiff again stated: "we respectfully reiterate that M3 Midstream is not pursuing any COGSA claims and **will not pursue such claims if this matter is remanded.**" [Docket Item 74] (emphasis in original).

The Court accepts and relies on Plaintiff's assertions and its characterizations of its own claims, as well as the language of the Second Amended Complaint itself, in concluding that the pleadings, on their face, do not implicate COGSA. Plaintiff does not purport to seek recovery for damage to the pipe that occurred at sea or during unloading. COGSA is not a "direct and essential element" of Plaintiff's case. In re Cmty. Bank of N. Va., 418 F.3d at 293. Plaintiff is entitled to pursue relief for some subset of the total injury allegedly suffered, and therefore Plaintiff may limit the scope of its allegations, as it clearly has done, and seek relief for damage that occurred after the discharge of the pipe from the

14

vessels. Plaintiff initiated this case one year ago, discovery on the merits has not gone forward, and Plaintiff has never varied from its insistence that its claims do not arise from the bill of lading, the carriage of the pipe on the vessels in question, or from the unloading of those vessels in the port of Camden. Neither the Defendants nor this Court can force Plaintiff to bring possible claims for damage during the voyage at sea or offloading of the goods that it has decided not to bring. If damage to the pipe occurred during the voyage or offloading at Camden, that damage will not be recoverable herein by Plaintiff.

Defendants' contention that their liability is limited by COGSA, as incorporated into the bill of lading, is a federal law defense, which cannot form the basis for removal, unless COGSA completely preempts state law in this circumstance, discussed infra, Part III.B.2. See Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004) ("the existence of a federal defense normally does not create statutory arising under jurisdiction, and a defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law") (internal quotation marks and citations omitted, emphasis in original); Lazorko, 237 F.3d at 248 ("If, however, the defendant merely has a federal law defense, he may not remove the case, although

15

he may assert the federal defense in state court.") (citing Franchise Tax Bd., 463 U.S. at 9-12); cf. United Jersey Banks v. Parell, 783 F.2d 360, 365 (3d Cir. 1986) ("An anticipated defense of federal preemption cannot provide a basis for removal") (citing Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n, 657 F.2d 29, 34-35 (3d Cir. 1981), and Franchise Tax Bd., 463 U.S. at 12 n.11).

### 2. Whether the Paramount and Himalaya clauses provide a basis for jurisdiction

Defendants contend that, while COGSA ordinarily applies only until the time when the goods are discharged from the ship, the Paramount and Himalaya provisions in the bill of lading extend the protections of COGSA to agents or servants of the carrier for any period prior to loading or after discharge from the vessel, and therefore COGSA applies to the DRS and SJPC. (See, e.g., SJPC Resp. to OTSC ("SJPC Resp.") [Docket Item 55] at 6.)

Defendants rely primarily on Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14 (2004), for the proposition that COGSA governs this action and preempts state law. In Kirby, plaintiff James N. Kirby, Pty Ltd. ("Kirby"), was an Australian manufacturing company that sold machinery to General Motors in Huntsville, Ala. Id. at 19. Kirby hired International Cargo Control ("ICC") to provide end-to-end transportation from Australia to Huntsville, and ICC negotiated and issued a bill of lading to Kirby invoking the default liability rule

16

of COGSA for the sea leg of the journey and limiting liability to a higher amount for the land leg in a Himalaya clause. <u>Id.</u> at 19-20. ICC then hired Hamburg Süd, a shipping company, to transport the containers, and Hamburg Süd issued its own bill of lading to ICC with a new Himalaya clause that set liability for a land accident lower than the limitation in the ICC bill of lading. <u>Id.</u> at 21, 32. Hamburg Süd then hired Norfolk Southern Railway Co. to transport the machinery from a port in Savannah, Ga., to Huntsville by rail. <u>Id.</u> at 21. The train derailed en route to Huntsville, damaging the goods, and Kirby and its insurer sued Norfolk on tort and contract claims. <u>Id.</u>

The district court in <u>Kirby</u> properly exercised diversity jurisdiction, but the U.S. Supreme Court stated that the suit "could also be sustained under the admiralty jurisdiction by virtue of the maritime contracts involved." <u>Id.</u> at 23. The Court determined that the bills of lading were maritime contracts and were not "inherently local," before interpreting the contracts under federal law. <u>Id.</u> at 25-27. On the merits of the claims, the Court determined that the land carrier, Norfolk, was an intended beneficiary of the ICC bill of lading and Norfolk's liability was limited by the terms of the ICC bill of lading, which Kirby had negotiated. <u>Id.</u> at 32. The Court also held that "an intermediary binds a cargo owner to the liability

limitations it negotiates with downstream carriers," because the
Court wanted to "ensure the reliability of downstream contracts for
liability limitations." Id. at 34. Thus, Kirby was bound by the
limitations in the bill of lading, including the Himalaya clause,
that Kirby's intermediary, ICC, had negotiated on Kirby's behalf,
covering the inland leg of the journey. Norfolk was entitled to the
protections of the liability limitations in the Hamburg Süd bill of
lading as well. Id. at 36. The Supreme Court later summarized its
holding: "Kirby held that bill of lading provisions permissible under
COGSA can be invoked by a domestic rail carrier, despite contrary
state law." Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp., 130
S. Ct. 2433, 2438-39 (2010).

   M3 Midstream distinguishes Kirby because, there, the
manufacturer sued a carrier with which it had negotiated an
end-to-end bill of lading to the inland destination in Alabama,
whereas here Plaintiff is the purchaser of the goods who did not
negotiate any bill of lading with any party, and the bill of lading
did not by its terms provide for carriage of these goods beyond their
offloading at Port Camden. Plaintiff argues that the Westfal-Larsen
bill of lading is inapplicable because "M3 Midstream was not a party
to the bill of lading (or to any other supposed bill of lading relating
to the damaged pipe at issue). Further, M3 Midstream is not suing

on the Westfal BOL or any other bill of lading." (Pl. Resp. at 3.) Plaintiff argues that Defendants have not produced any citations to authority that would bind Plaintiff to a bill of lading to which it was not a party. (Pl. Resp. at 4.) Because Plaintiff did not negotiate and was not a party to a bill of lading, Plaintiff concludes that it is not bound by the terms of the bill of lading and therefore COGSA does not apply to this action.

The Court agrees with Plaintiff that nothing in <u>Kirby</u> answers the question of whether parties may confer federal subject matter jurisdiction on this Court by way of contract for purposes of removal and then invoke the protections of contractual liability limitations against a third-party buyer who did not negotiate any bills of lading and did not consent to any liability limitations with respect to damage occurring after conclusion of off-loading. <u>Kirby</u> was filed in federal court on the basis of diversity and presented no removal questions. <u>Kirby</u>, 543 U.S. at 21. Although subject matter jurisdiction was not an issue in the case, the Supreme Court stated that admiralty jurisdiction also existed over "the maritime contracts involved," which had been negotiated by the plaintiff with downstream carriers and contemplated the entire journey of goods from manufacturer to final destination. <u>Id.</u> at 23. In <u>Kirby</u>, the rail carrier was able to invoke liability limitations against the

manufacturer, who had negotiated an end-to-end bill of lading with a carrier and sued for breach of that contract. Kirby, 543 U.S. at 36. By contrast, here, the bill of lading does not contemplate "on carriage to" the final destination, and therefore it is not a maritime contract that also provides for inland carriage to the final destination. In addition, Plaintiff does not sue for breach of a maritime contract it negotiated with downstream carriers.

Moreover, Defendants here do not argue that admiralty jurisdiction provides a proper basis for removal. Kirby speaks generally of the federal interest in regulating maritime commerce but does not address whether federal question jurisdiction arises when the record contains no end-to-end contract between M3 Midstream and any Defendant.

To rule on the present record that the bill of lading confers federal question jurisdiction would be an expansion of COGSA, Kirby, and federal jurisdiction jurisprudence.[7] In general, parties may not

---

[7] The Third Circuit has considered Kirby only twice since the opinion was issued, and neither discussion is on point. In Ferrostaal, Inc. v. M/V Sea Phoenix, 447 F.3d 212 (3d Cir. 2006), the panel considered whether an explanatory parenthetical in Kirby meant that the "fair opportunity doctrine is binding law." Ferrostaal, 447 F.3d at 224. The court concluded that "our survey of precedent reveals no basis to conclude that the carrier must offer a choice of rates or provide the shipper with notice of the $500 limit." Id. at 226.

In re Frescati Shipping Co., Ltd., 718 F.3d 184, 189 (3d Cir. 2013), concerned an oil tanker that had been damaged in the Delaware River, causing an oil spill. In the suit, the owner of the vessel

20

confer federal question jurisdiction by contract or agreement. See In re Combustion Eng'g, Inc., 391 F.3d 190 (3d Cir. 2004) ("'[s]ubject matter cannot be conferred by consent of the parties'") (quoting In re Resorts Int'l, Inc., 372 F.3d 154, 161 (3d Cir. 2004)); Barrett v. Covert, 354 F. Supp. 446, 450 (E.D. Pa. 1973) ("Federal jurisdiction cannot be conferred by agreement, consent, or collusion of the parties"); Pacrim Pizza Co. v. Pirie, 304 F.3d 1291, 1294 (Fed. Cir. 2002) ("parties may not by contract bestow jurisdiction on a court"); Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1505 (7th Cir. 1991) ("federal jurisdiction cannot be created by contract"). Furthermore, in Kirby, the Supreme Court did not discuss (1) whether jurisdiction may be conferred by a Himalaya clause; (2) whether federal jurisdiction exists for a post-offloading damage claim when the bill of lading provided that the port was the destination; (3) what rights the agents of the carrier or subcontractors could assert against General Motors, the

---

sued the party ("CARCO") that had requested the oil be shipped and also owned the marine terminal, alleging that CARCO breached a "safe port/safe berth warranty" it made to an intermediary responsible for chartering the vessel. Id. The Third Circuit cited Kirby for the proposition that when a maritime contract is not inherently local, "federal law controls the contract interpretation." Id. at 198 (quotation marks omitted). The court held that the "safe berth warranty necessarily benefits the vessel, and thus benefits its owner as a corollary beneficiary." Id. at 199.

buyer of the goods[8]; or (4) whether an owner of cargo who is not a party to a bill of lading for the port-to-port carriage of the cargo is foreclosed from state remedies for post-offloading damage occurring after the transport of goods by sea has been completed. Finally, as stated above, even if Defendants are entitled to the protections of COGSA, the federal statute is not an essential element of Plaintiff's case; rather, COGSA is a federal defense, which cannot be the basis for removal to federal court, unless COGSA completely preempts state law.

The foregoing analysis does not resolve whether COGSA completely preempts the state-law claims at issue here, thereby supplying federal question jurisdiction. In the wake of Kirby, many federal courts that have concluded that COGSA completely preempts state law. See UTI, U.S., Inc. v. Bernuth Agencies, Inc., No. 12-21965, 2012 WL 4511304, at *5 (S.D. Fla. Oct. 1, 2012) (citing Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co., Ltd., 215 F.3d 1217, 1220 (11th Cir. 2000); Fireman's Fund Ins. Co. v. Crowley Liner Servs., Inc., No. 08-1745, 2011 WL 3651804, at *7 (D.P.R. Aug. 17, 2011); Diamond v. State Farm Mut. Auto. Ins. Co., No. 09-1110, 2010 WL 2904640, *5 (E.D. Cal. July 26, 2010), report and

---

[8] General Motors is the analogous party to Plaintiff here. It was not a party to the Kirby litigation, and the Supreme Court has not addressed this specific question.

recommendation adopted, No. 09-111, 2010 WL 3371213 (E.D. Cal. Aug. 26, 2010) (holding that when the parties extend COGSA to periods before loading and after discharge, COGSA completely preempts state law); Cont'l Ins. Co. v. Kawasaki Kisen Kasha, Ltd., 542 F. Supp. 2d 1031, 1034 (N.D. Cal. 2008).

However, while COGSA preempts state law where it applies, COGSA does not completely preempt state law beyond the tackles for purposes of federal question jurisdiction. The statutory scheme permits state causes of action to govern beyond the tackles unless the parties contract otherwise. Where parties so contract, COGSA substantively preempts state causes of action, but COGSA cannot be said to completely preempt state law where, depending on the actions of individual parties, state law causes of action may lie. Where a contract extending COGSA exists, a defendant would have a federal defense (the extension of COGSA liability limitations by contract) but such a defense would not be the basis for removal. Therefore, preemption cannot provide federal question jurisdiction here.

Whether a Himalaya clause between the shipper and the carrier may confer federal question jurisdiction and bind a third-party buyer/plaintiff is not clear from existing case law. There may be valid policy arguments in favor of finding federal jurisdiction and upholding limitations of liability against the third-party buyers

23

of goods. But Defendants have not presented any persuasive arguments, and Kirby, its progeny, and the opinions within the Third Circuit, do not compel the conclusion that removal of this action was proper. The Court must resolve all doubts in favor of remand. Boyer, 913 F.2d at 111. The Court will order remand.[9]

### 3. Whether the Complaint was artfully pleaded

Defendants also argue that the Complaint was artfully pleaded to avoid federal jurisdiction by failing to reference the bill of ladings, which Defendants contend invoke COGSA, or by failing to sue the carrier, which would bring this case within the scope of more established case law. (See DRS Resp. at 7; Calibre Resp. at 6.) At oral argument, Defendants speculated that Plaintiff did not sue on the bill of lading or bring claims against the carrier because Plaintiff's suit on the bill of lading would be untimely.[10] However,

---

[9]  The duties and liabilities of the carrier, its agents and its servants for the tackle-to-tackle phase of carriage are not the subject of this ruling. COGSA would apply to any claim by Plaintiff for damage occurring during the tackle-to-tackle phase under the terms of the bill of lading, because the carrier and its agents and servants performed those duties under the terms of the bill of lading. This opinion holds that where the bill of lading was not negotiated by or for Plaintiff, and where it covers only the carriage of cargo to the point of offloading, and where Plaintiff does not sue on the bill of lading, a suit for damages occurring after offloading, arising under state law, is not preempted by COGSA.

[10] The pipe was damaged in September or October 2011, and this suit was filed in Superior Court of New Jersey on January 27, 2013; COGSA has a one-year statute of limitations. See Petroleos Mexicanos

Defendants do not substantiate their speculation with any evidence, and, for the reasons explained above, Plaintiff is entitled to limit the scope of its own Complaint. There is no basis in the record for concluding that either the Complaint or Second Amended Complaint was artfully pleaded to avoid federal jurisdiction. The Court does not have subject matter jurisdiction over this action on the basis of artful pleading.

## IV. Conclusion

Defendants have failed to meet their burden to prove that subject matter jurisdiction exists over this action. Therefore, the Court will remand the action to New Jersey Superior Court, Camden County, Law Division. An accompanying Order will be entered.


__February 26, 2014__            __s/ Jerome B. Simandle__
Date                             JEROME B. SIMANDLE
                                 Chief U.S. District Judge


---

Refinacion v. M/T King A, 554 F.3d 99, 105 (3d Cir. 2009); COSGA §
3(6), Historical & Statutory Notes to 46 U.S.C. § 30701.